## William McCoy
### *v.*
## The World's Columbian Exposition.

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

1. Corporations—*records of corporation are evidence that capital stock has been subscribed.* The records of a corporation are competent evidence that the full capital stock has been subscribed, and, together with the final certificate of complete incorporation issued by the Secretary of State, are *prima facie* proof of such fact.

2. Same—*what will not defeat liability on stock subscription.* Liability on a subscription to capital stock is not defeated by proof that the subscription list contains the names of corporations not authorized to subscribe, where the defendant has stood by during the completion of the organization without objecting to such subscriptions or repudiating his own on that account, and there is no proof that the corporations have not performed their contracts or that they have availed of their privilege to deny their obligations.

3. Same—*absence of proof that increase was subscribed does not affect original subscriber.* A subscriber to capital stock, in anticipation of the organization of the corporation, cannot defend a suit on his subscription upon the ground the capital stock had been increased and there was no proof such additional stock was fully subscribed.

4. Evidence—*proof that the World's Fair was held in Chicago is unnecessary.* In a suit on a subscription to the capital stock of "The World's Columbian Exposition," compliance with a condition in the subscription that the exposition be held in Chicago need not be proved, since the fact is historical and of such notoriety that the court will take judicial notice thereof.

5. Interest—*stock subscription draws interest after call.* A written subscription to capital stock, the amount of which is payable in installments as called for by the directors, draws interest after the obligation has matured by the making of a call or demand.

*McCoy* v. *World's Columbian Exposition*, 87 Ill. App. 605, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding.

Joseph Wright, for appellant.

Matz, Fisher & Boyden, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Appellant subscribed for one thousand shares of the capital stock of appellee. The shares were $10 each, and at the time of subscription two per cent, or $200, was paid to meet preliminary expenses. Afterward, three calls, of eighteen, twenty and twenty per cent, respectively, of the capital stock were made, which appellant refused to pay. Appellee brought this suit to recover the amount of said calls, and at the trial the court directed a verdict for $7500, being the amount of the calls, with five per cent interest from the time when they became due. A verdict was returned accordingly and judgment was entered thereon. The Branch Appellate Court for the First District affirmed the judgment.

To the declaration defendant filed twelve pleas. The first was the general issue, the second *nul tiel* corporation, and the remaining ten were substantially alike, and averred in different forms that the capital stock of the plaintiff had never been fully subscribed. When the case was called for trial no replications to these pleas had been filed, and defendant objected to a trial and filed his motion for judgment in his favor on each of the twelve pleas. Counsel for plaintiff stated that they would immediately file general replications to each of the pleas, and the court denied the motion for judgment and called a jury. The jurors were sworn to answer questions and examined by the parties, but before they were sworn rep-

lications were presented and leave was given to file them
*nunc pro tunc* as of the time the case was called for trial.
The defendant excepted to each ruling of the court, and
the jury was sworn to try the issue. It would have been
error to try the case without issues of fact being formed
on the pleas, and it may be admitted that the court had
no power to order the replications filed *nunc pro tunc*
when none had ever been filed and there had been no
attempt to file them. The case, however, was not tried
without being at issue, and when the jury were sworn to
try the issues the latter were fully made up. Defendant
suffered no harm, being fully advised as to the issue to
be joined when the jurors were examined as to their quali-
fications. The first two pleas only required the *similiter*,
and the replications were general, alleging that the en-
tire capital stock had been subscribed prior to the calls.
When they were filed the jury had not been sworn and
there was opportunity for any further examination, or, if
there was good reason, defendant might have asked for
time thereafter to prepare for trial, but he did nothing
of the kind, and, it is apparent, had no reason to do so.
The court was right in denying the motion for judgment
and trying the case.

No complaint is made of anything that occurred on
the trial up to the time the court directed a verdict, and
that direction is attacked solely on the ground that the
evidence showed the capital stock had not been fully
subscribed at the time the calls were made. Plaintiff
was incorporated under the general act concerning cor-
porations, in force July 1, 1872. The capital stock was
fixed at $5,000,000, and commissioners were licensed to
open books for subscription to such stock. The commis-
sioners took defendant's subscription, with others, for
the purpose of effecting the incorporation. In such case
the contract of subscription is binding and enforceable
only after the full capital stock has been subscribed.
Until the whole amount has been subscribed the corpo-

ration cannot be organized or have a legal existence and the directors cannot make any call or assessment on the shares. The subscribers cannot be required to pay such assessments until the corporation is authorized by law to begin the prosecution of its business. (*Allman* v. *Havana, Rantoul and Eastern Railroad Co.* 88 Ill. 521; *Temple* v. *Lemon*, 112 id. 51; 1 Redfield on Railways, 175; Cook on Stock and Stockholders, sec. 176; Morawetz on Private Corp. sec. 137.) In such a case, after the capital stock has been fully subscribed the commissioners are authorized to convene a meeting of the subscribers, upon due notice addressed to each, for the purpose of electing directors or managers and for the transaction of other business. In this case the stock was fully subscribed in good faith, and it was not claimed that there was any nominal or fictitious subscription or any release of any subscriber from the obligation of his contract. The notice was given to the subscribers and a meeting held on April 4, 1890, when directors were elected for the term of one year. In pursuance of the statute, on April 8, 1890, the commissioners made a report to the Secretary of State of their proceedings, signed and sworn to by them, including therein a copy of the notice to the subscribers of the meeting to organize, a copy of the subscription list and the names of the directors, with their terms of office. The Secretary of State thereupon issued a certificate of the complete organization of the corporation, making a part thereof a copy of all the papers filed in his office, including the subscription list, and this was recorded in the office of the recorder of deeds of Cook county, where the principal office of the corporation was located. The records of the corporation are sufficient and competent evidence that the full capital stock has been subscribed. (Cook on Stock and Stockholders, sec. 180.) The final certificate of complete incorporation issued by the Secretary of State April 9, 1890, and the proceedings attached thereto, were offered in evidence and

were *prima facie* proof that the full amount of the capital
stock had been subscribed. *Jewell* v. *Rock River Paper Co.*
101 Ill. 57.

There is no claim that subscriptions to the entire
amount of the capital stock were not made and accepted
in absolute good faith, but it is contended that the *prima
facie* case was overcome by the fact that in the subscrip-
tion list there appear subscriptions in the names of the
Chicago Gas Trust Company and the Nilsson Shirt and
Laundry Company, corporations organized under the laws
of the State of Illinois, charters of which were introduced
in evidence. There were also subscriptions in the names
of national banks, and it is said that these, from their
names, must necessarily have been banks organized un-
der the national banking law, and that as to all these
corporations the act of subscribing to the capital stock
of plaintiff was *ultra vires* and the subscriptions not bind-
ing. Corporations organized under the laws of this State
cannot become stockholders in other corporations unless
power is specifically given by their charters or neces-
sarily implied from them, (*People* v. *Chicago Gas Trust Co.*
130 Ill. 268,) and national banks have no power to sub-
scribe for capital stock of other corporations. It was
proved that the Nilsson Shirt and Laundry Company had
been sued by plaintiff and a judgment had been recovered
against it for its unpaid stock subscription. So far as
that corporation is concerned, the judgment established
its liability and the validity of its contract. The sub-
scription of the gas trust company or subscriptions of
other corporations were illegal in the sense that they
were *ultra vires*, and such corporations could make that
defense or not, at their pleasure. The contracts may
have been performed by the corporations, and there is
no evidence that they were not performed.

We are of the opinion that the evidence was not suffi-
cient to discharge defendant from the obligations of his
contract. Most cases have arisen under charters granted

to certain individuals who are constituted a corporation with power to receive subscriptions to the capital stock, but the theory of our general Incorporation act is different, in essential particulars, from such cases. Under this act no charter is granted in the first instance, but certain persons are appointed commissioners to receive subscriptions preliminary to organization. They have no other authority than to receive subscriptions and convene the subscribers for the election of directors or managers and the transaction of other business, and to certify the result. When the entire capital stock has been subscribed the meeting to perfect the preliminary organization is held. The papers and subscription list are then filed in the office of the Secretary of State and a certificate of complete organization is issued. This certificate and papers, including the subscription list, are recorded in the office of the recorder of deeds, and upon such record being made the corporation is deemed fully organized and may proceed to business. During all the proceedings the defendant made no objection to any subscription, but permitted the certificate to be issued and to go upon the public records containing the full list of subscribers, and he took no steps to repudiate the subscription or to notify the commissioners or corporation of the objection that some subscription was unauthorized. The defense now alleged was not a reason for his refusal to pay his subscription, but it was based on entirely different and inconsistent grounds. His refusal was based solely on the ground that the World's Columbian Exposition was not held on the lake front but was located some distance south of that point. He testified that he had no knowledge of this defense until after he was sued, when his attorney informed him that a subscription by a corporation, against which such a corporation could make a defense, would enable him to evade his own obligation. Under all the circumstances we think that he should at least have shown that the contracts which were alleged

to be *ultra vires* were not performed, or that the corporations availed themselves of their privilege to deny or repudiate their obligations. Under his claim and the evidence every dollar of every subscription made in good faith might have been paid and every contract fully executed and yet he evade his obligation. He would not be authorized to intervene and make a defense in behalf of a corporation which it did not desire to make, and to offer it here would be to introduce a collateral issue, incapable of any conclusive determination in this case because the corporation might choose to perform its obligation or decline to make the defense if sued. To permit a defense upon such proof, where a party has stood by without notice or objection during the entire proceeding, would afford opportunity for fraud upon other subscribers and upon the general public.

Plaintiff increased its capital stock from $5,000,000 to $10,000,000, and it is, argued that it could not recover from defendant because it was not proved that the additional $5,000,000 was subscribed. That question does not concern the defendant, who is one of the subscribers in anticipation of the organization of the corporation. If it was legally organized, any one who subscribed for the additional stock would become at once a shareholder without regard to the amount of the additional stock taken. Morawetz on Private Corp. sec. 142.

The subscription contained the condition that the exposition should be located in Chicago, and it is said that there was no proof of the performance of that condition. The constitution of the State was amended to authorize the corporate authorities of the city of Chicago to issue bonds in the aid of the exposition to be held in the city of Chicago, and the fact that it was located and held there appears from public acts of Congress. From numerous such acts it became a historical fact of such public notoriety that the courts will take judicial notice of it.

The court directed an allowance of interest at five per cent from the time when the assessments became due, and it is insisted that the statute relating to interest did not warrant such an allowance. The statute authorizes a recovery of interest on all moneys after they become due on any instrument of writing. The defendant's subscription was in writing, and the amount was payable in installments as called for by the directors. It was not different in its nature from any promise in writing to pay a sum of money in installments upon demand, and when the obligation matured by the making of the call or demand, interest began to run and was properly allowed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*