2 F.2d 334 (1924)
In re HOOL REALTY CO.[*]
HUMMEL
v.
SHELBY.
No. 3283.
Circuit Court of Appeals, Seventh Circuit.
August 14, 1924.
Rehearing Denied October 8, 1924.
*335 D. K. Cochrane and Cameron Latter, both of Chicago, Ill., for appellant.
Vincent D. Wyman, of Chicago, Ill., for appellee.
Before ALSCHULER and EVAN A. EVANS, Circuit Judges, and FITZHENRY, District Judge.
EVAN A. EVANS, Circuit Judge.
On September 4, 1919, appellee executed to the Park Gate Building Corporation, herein called lessee, a 99-year lease covering property known as Nos. 1538-1564 East Sixty-Third street, Chicago, for the agreed rental of $970,000, payable monthly. The lease provided against default in the payment of taxes, rents, etc., and contained, among other clauses, the following:
"Concurrently with the execution of this lease, the lessee has deposited with the lessor the sum of eight thousand dollars ($8,000.00), said amount to be held and retained by the lessor as security for the performance and observance by the lessee of all the covenants, provisions, and conditions of this lease, and until the lessee shall have in good faith completed the work of modernizing the demised building in the manner set forth in the preceding `fifth' section hereof, and shall have fully paid for such work and satisfied the lessor that no mechanics' liens or claims therefor can arise on account of said work or on account of any labor or materials furnished therefor, at which time, if the lessee is not then in default in the payment of rent or in the payment of any other sums to fall due under this lease, or in the performance or observance of any of the other terms or provisions hereof, said sum of eight thousand dollars ($8,000.00) shall be returned to the lessee by the lessor: Provided, however, that the lessor shall in no event be required to return said deposit to the lessee prior to October 31, 1924; and provided, further, that while he retains said deposit the lessor shall pay to the lessee interest on said amount at the rate of 3 per cent. per annum payable semi-annually. In case of the termination of this lease under any of its provisions, while the said deposit of eight thousand dollars ($8,000.00) or any part thereof is being held by the lessor as security for the remodeling of said building, the said sum of eight thousand dollars ($8,000.00), or whatever part thereof shall remain in the hands of the lessor, shall be forfeited to and be retained by the lessor as liquidated damages and not by way of a penalty, and said lessor may, notwithstanding the forfeiture of said fund or any portion thereof, terminate this lease and all the rights of the lessee thereunder shall thereupon be at an end."
Immediately upon signing the lease, the lessee executed to the Chicago Title & Trust Company, as trustee, a mortgage upon its leasehold interest to secure a bond issue totaling $181,000, and the bonds were promptly sold.
Bankrupt, also an Illinois corporation engaged in the real estate business, was promoted by one James A. Hool, who was its president and in control of its affairs. Hool was a promoter, who organized numerous corporations of the "only one building" character, which he controlled, and to finance his enterprises he issued bonds inadequately secured and negotiated under circumstances not creditable to himself. In short, he was what might be derisively called an operator of "high finance," who used his corporations to further his questionable ventures. He misappropriated the money of one corporation, sometimes repaying it from funds unlawfully taken from another, and used his clerks and stenographers as incorporators and dummy directors. As the curtain fell at the conclusion of the last act, we find these corporations, including lessee, unofficered, all the stock standing in the name of the Hool Realty Company, and this company a bankrupt, its assets dissipated by its sole stockholder, a fugitive  a sad commentary upon the weakness of our corporation laws and the practice permissible thereunder of allowing irresponsible or unprincipled stockholders to incorporate and dummy directors to misdirect the corporate affairs. *336 On May 22, 1922, a petition in bankruptcy was filed against the Hool Realty Company, and later appellant was appointed trustee, succeeding the Central Trust Company of Illinois, the receiver appointed to protect the creditors. On May 8, 1922, appellee notified the lessee of its failure to pay part of an installment of rent amounting to $241.67, and he also charged the lessee with failure to maintain and keep the premises in good order and repair. Failure to keep the buildings adequately insured was also asserted.
On May 26, the receiver obtained an order requiring appellee to show cause why he should not be restrained from proceeding with his attempted forfeiture of the lease. This was followed by an injunctional order on June 9, restraining appellee from interfering with the receiver in managing the property and collecting the rents. Appellee sought to secure a vacation of the injunctional order, and the issues were referred to a master, who reported:
That bankrupt had failed to pay $241.67 due as rent on June 1, 1922; had failed to deposit certain of the insurance policies with appellee in accordance with the terms of the lease; that taxes for the year 1921 had not been paid up to May 1, 1922; that lessee had failed to pay $680 due on account of attorney's fees occasioned by mechanics' liens proceedings for which payment the lease made provision; that no other sum was due lessor under the lease; that there had been a dismantling of the west half of the building; that bankrupt owned all of the stock of the Park Gate Building Corporation; that bankrupt had expended $250,000 on improvements subsequent to the execution of the lease; that the building was worth $300,000, and the site $150,000; and that there was upon the premises sufficient material, fixtures, and equipment to complete the alterations commenced on the west half of the building.
The special master recommended that the sums due appellee be paid, but that forfeiture of the lease be denied. The District Judge overruled the report of the special master, and found that the leasehold estate was terminated on June 20. The restraining order of June 12 was vacated. It is this order we are asked to reverse.
The original notice served by the lessor assigned the nonpayment of rent as a ground for terminating the lease. Failure to heed the notice for 10 days could not strengthen appellee's position, if as a matter of fact appellee had the money in its possession to apply upon this rent, or if the notice was not served on the proper party. The lease expressly provided that, "before terminating this lease on account of any default by the lessee, * * * the lessor will notify the trustee or mortgagee under any trust deed or mortgage appearing of record and covering the lessee's leasehold estate," etc. The first notice was therefore ineffectual because not served on the Chicago Title & Trust Company as trustee.
It is also worthy of note that the lessor was protected by the heretofore quoted paragraph of the lease, in that $8,000 was deposited "as security for the performance and observance by the lessee of all the covenants, provisions, and conditions of this lease." To make the matter definite and beyond dispute, it was further provided that, "if the lessor is not then in default in the payment of rent, or in the payment of any other sums to fall due under this lease, or in the performance or observance of any of the other terms or provisions hereof, said sum of eight thousand dollars ($8,000.00) shall be returned," etc.
This payment made to secure the lessee and which covered rent and taxes is somewhat determinative on other points involved, so far as they relate to appellee's right to declare a forfeiture. On June 7 a second notice was served, this time upon the trustee, notifying it of the lessee's default, and on June 22, 1922, appellee gave notice that he declared the lease forfeited and terminated, and possession of the premises was demanded. This, however, was subsequent to the bankruptcy proceedings, when all of the property was in charge of a receiver, and subsequent to the entry of the rule directing appellee to show cause why he should not be restrained from interfering with the full and free enjoyment of the building and the collection of the rents.
While the provision in the lease necessitating the deposit of $8,000 to secure the lessee's compliance with the conditions of the lease effectually prevents the declaration of a forfeiture, where the default was for a sum less than $8,000, we find other reasons for refusing to terminate the lease. It appears that, between the service of the first and the second notices, appellee, with knowledge of the alleged grounds of default, collected various sums of money from bankrupt's tenants, and thus satisfied his rent demands. In thus accepting this money, appellee waived his right to terminate the lease for nonpayment of rent. Hopkins *337 v. Levandowski, 250 Ill. 372, 95 N. E. 496; 12 R. C. L. 1132.
Furthermore, the bankruptcy proceeding, followed by the appointment of a receiver, and its possession of the res, prevented a termination of the lease thereafter, save through an order of court. The court of bankruptcy, having acquired jurisdiction and taken possession of the property, was the proper court and the only court to which the parties could appeal for relief.
It may be conceded that the receiver acquired the property with all of the infirmities of title that the bankrupt possessed. But no notice of termination of the lease had been given when the bankruptcy proceedings were begun, as required by the terms of the lease, and the lessor's possession of funds more than sufficient to pay rent, etc., left the receiver's title unclouded by any declared default for nonpayment of rent. What course should thereafter be pursued was within the sound discretion of the court of equity having jurisdiction of the suit and possession of the property.
In considering the conflicting contentions of the appellant and appellee, the fact that vast sums of money obtained from third parties had been expended in remodeling and in improving the property is most persuasive. Nor should the unjustifiable conduct of Hool too greatly prejudice the rights of the innocent third parties, the purchasers of the bonds. The lessor's security had been greatly improved (the master says by $250,000), and the improvements were permanent. At all times he had in his possession money, belonging to lessee, but applicable to such payment, more than sufficient to satisfy the rent, taxes, and attorney's fees charges. If the lease be canceled and the property returned to lessor, he will be greatly enriched, and this will follow as a result of the actions of Hool, whose misconduct the creditors were unable to correct, except through court proceedings. It rests with the court to make ample provisions to secure the rent; in short, to fully and adequately protect appellee and at the same time provide for the completion of that part of the building in the course of reconstruction. In asking the court to declare the lease terminated, and for possession of the property, appellee was addressing himself to a court of equity having full power and authority to do equity between the parties. Hurley v. A., T. & S. F. R. R., 213 U. S. 132, 29 Sup. Ct. 466, 53 L. Ed. 729. And its failure to return or offer to return the $8,000 deposited is significant.
This would result in a reversal of the order, were it not for another contention, advanced with much confidence and accepted as controlling in the District Court. Appellee contends that bankrupt could not acquire the stock of the lessee, and therefore neither the lessor nor trustee was justified in taking possession of the property, or listing it as part of the assets of the bankrupt. North Ave. Building Ass'n v. Huber, 270 Ill. 81, 110 N. E. 312, Ann. Cas. 1917B, 587; National Home Building & Loan Ass'n v. Home Savings Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; McIlvaine v. Foreman, 292 Ill. 224, 126 N. E. 749; Calumet Dock Co. v. Conkling, 273 Ill. 318, 112 N. E. 982, L. R. A. 1917B, 814. Appellant replies by contending that the transfer of the stock was not void, and the ultra vires action of the corporation can only be raised by the state. National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443.
Our examination of the authorities confirms the contention that the Illinois decisions, out of harmony with the prevailing rulings, permit the question to be raised at any time, and also that the statutory provision against a corporation holding real estate makes any contract for the acquisition of real estate by a corporation absolutely void. It seems to have long been the policy of the state of Illinois, as expressed by its legislative enactments and supported by a long list of judicial decisions, to deny absolutely to corporations the power to hold real estate. The cases cited support the contention that this declared public policy has been upheld by the courts, and that contracts in violation thereof are not merely voidable, but void, and the "legality of the act may be raised by any party affected by it." The rigor of this policy has recently been somewhat modified and section 3 of the Illinois Corporation Act (Smith-Hurd Rev. St. 1921, c. 32) authorizes the formation of corporations for the specific purpose of "acquiring, owning, erecting * * * or operating only one building and the site therefor." But by section 8 of this act it is further provided that "no corporation shall purchase, acquire or hold, directly or indirectly, the stock of a building corporation or of an agency and loan corporation."
Whether the Supreme Court of Illinois *338 will hold contracts made in violation of section 8 to be absolutely void or merely nonenforceable, or adopt the rule finally accepted and announced in the two cases heretofore cited (National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443), we need not conjecture, for an examination of the record justifies the conclusion that lessee had dissolved in fact, at least in equity, prior to Hool's transfer of his interest in the property (and in the so-called corporation) to the lessee. It is true lessee had not proceeded in the manner permitted it under the Illinois statutes to dissolve, but corporations may dissolve in numerous ways. Lessee had ceased to function. It held no corporate meetings. It was without officers and without directors. There were no stockholders available to serve as directors or officers.
In fact, it might, except as against innocent third parties contracting with it, be said to have never been lawfully organized. There was no consideration for the $10,000 worth of stock issued; the incorporators were not the real holders of the stock that stood in their names; stock was assigned and passed into the possession of Hool; and the officers and directors who assumed to act were not qualified to hold their respective positions. The subsequent increase in its capitalization to $300,000 was also accompanied by a total failure of consideration for its issuance.
But, assuming it had corporate existence, it is sufficient to support the conclusion here reached to say that equity may properly treat it as dissolved prior to Hool's transfer of his interest in its assets to the bankrupt. Upon its dissolution the assets passed to Hool, the sole stockholder. Hool was indebted to bankrupt in a large sum of money. Part of the indebtedness was represented by a past-due $60,000 note. To secure the payment of this indebtedness, Hool transferred his interest in the property which came to him upon the dissolution of lessee to bankrupt. The fact that in doing so he did not make use of the usual form of conveyance, and the fact that he may not have understood his exact status as the sole stockholder of the defunct corporation he had brought into existence and allowed to die, cannot in this equity suit prevent us from viewing the rights of the parties as they actually existed. It was obviously his intention to transfer to bankrupt all of his interest in and to the property once held by the lessee. Not only was he personally indebted to the bankrupt in a sum exceeding $60,000 upon a promissory note past due, but lessee was indebted to the bankrupt for a sum in excess of $200,000 which bankrupt had advanced or for which it had become liable in the course of the reconstruction of the building upon the leasehold. Neither Hool nor lessee ever subsequently made any claim to the property. Lessee could not do so, for it had neither offcers, directors, nor stockholders. It not only could not act, but was powerless to put itself in a position to function. It was therefore in every essential regard except form, dissolved. It does not and cannot question appellant's title to the property. Hool cannot and does not question appellant's title to the property. Acquired solely in order to secure a debt, appellant is in a position in a court of equity to assert its right to hold and possess the property as against the appellee.
The decree is reversed, with instructions to re-enter the injunctional order, but upon terms and conditions that will protect appellee under its lease and fixing a reasonable time in which appellant, or in case of his default, the mortgagee, may comply therewith. In case of the failure of appellant or the mortgagee to comply with such terms and conditions, appellant should be accorded the right to again apply for a decree terminating the lease and demanding possession of the property.
FITZHENRY, District Judge.
I concur in the judgment of reversal, but I do not approve that portion of the opinion which holds that the Park Gate Building Corporation was dissolved by reason of the fact that the ownership of all of the capital stock of the corporation came into the possession of a single person, and the other circumstances enumerated. Cook on Corporations (4th Ed.) §§ 6, 631, 663, 664, and 709.
Hool owned a pre-existing debt to the Hool Realty Company of more than $60,000, and had diverted to the Building Corporation approximately $250,000 of the bankrupt's funds. When the impending crash became apparent to Hool, he assigned to the Realty Company his certificate of all the capital stock in the Building Corporation. True, certain entries were made on the books of the bankrupt, presumably at the instance of Hool, the president; but equity will disregard the form of the transaction and view its substance. So doing, Hool simply delivered his certificate to the Realty Company as a pledge for the payment of his personal indebtedness and the recovery of its funds *339 which he had diverted to the Building Corporation.
The bankrupt Realty Company was prohibited from becoming the owner of stock in the Building Corporation by virtue of section 8 of the Illinois Corporation Act of 1919, but it was not prohibited from becoming the pledgee of the stock to secure the payment of pre-existing debts. The ordinary rules governing pledges apply to this case. By the assignment of his certificate as pledgor Hool did not lose, and still retains, the legal title to all the stock of the Park Gate Building Corporation. In re McIntyre, 181 Fed. 955, 104 C. C. A. 419; Smith v. Lee (C. C.) 77 Fed. 779; Gilmer v. Morris (C. C.) 35 Fed. 682. He retains the legal right to the restoration of the stock pledged on payment of the debt, until it is sold under foreclosure, by or for the pledgee. Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307; 14 Corpus Juris, 731. There is certainly nothing in the law of Illinois that makes Hool incompetent to be the owner of all the capital stock of the Building Corporation, or prohibits the bankrupt from owning an equitable interest in Hool's stock to secure the payment of debts due it.
Under the General Corporation Act of 1872 (Laws 1871-1872, p. 296), which was in force until the act of 1919, corporations could not own stock in other corporations. Pullman Palace Car Co. v. Reed, 75 Ill. 125, 20 Am. Rep. 232; People v. Chicago Gas Trust Co., 130 Ill. 268, 22 N. E. 798, 8 L. R. A. 497, 17 Am. St. Rep. 319; McCoy v. World's Fair Columbian Exposition, 186 Ill. 356, 57 N. E. 1043, 78 Am. St. Rep. 288; People v. Union Gas & Electric Co., 254 Ill. 395, 98 N. E. 768, Ann. Cas. 1916B, 201; Burrows v. Niblack, 84 Fed. 111, 28 C. C. A. 130 (7th Cir.) The Illinois law was in harmony with the general rule in most jurisdictions. Marbury v. Kentucky Union Land Co., 62 Fed. 335, 10 C. C. A. 393.
The Illinois Act of 1919 completely reversed the policy of the state, expressly granting corporations (section 6, par. 6) the power "to own, purchase or otherwise acquire, * * * stocks * * * of any corporation, domestic or foreign," except (section 8) that of "a building corporation or an agency and loan corporation." As to the corporations within the description of section 8, the former policy of prohibition continues. Under the old policy Chief Justice Taft was discussing the effect of this prohibition as one of the judges of the Circuit Court of Appeals of the Sixth Circuit, and said: "This does not prevent a corporation from receiving the stock of another in payment of, or in security for, a debt in due course of business (Howe v. Carpet Co., 16 Gray, 493), but it prevents a deliberate and permanent investment of a corporation's assets in the stock of another." Marbury v. Kentucky Land Co., supra.
In People ex rel. v. Chicago Gas Trust Co., supra, while discussing the same rule, the Illinois Supreme Court said: "It is true that a gas company might take the stock of another corporation in payment of a debt, * * * but the actual purchase of such stock is not directly and immediately appropriate to the execution of a specifically granted power to operate gas works and manufacture gas."
It would be in harmony with these two holdings to find that, notwithstanding section 8, the Realty Company had the power to receive the legal title to Hool's stock in payment of its debts, but it is unnecessary to so hold as the transaction was clearly a pledge. The policy of the state of Illinois with reference to denying to corporations the power to hold real estate, except for purely corporate purposes, was not so markedly changed as that with reference to one corporation owning the stock of another. The only material change was that which authorized (section 3) the "one building corporation." This change is substantial and grants a franchise to each corporate entity organized under the new statute. Such a franchise possesses many elements of value not necessary to discuss here, but, suffice it to say, it contains many advantages over the mere private ownership of property.
In these circumstances, and in the light of these views, the purchaser of the stock from the trustee in bankruptcy in the course of administration of the bankruptcy estate, will receive good title to all the capital stock of the Building Corporation with the many elements of value which would not accompany a sale of the mere physical assets of a defunct corporation. If the Park Gate Building Corporation was dissolved before Hool assigned the capital stock to the Realty Company, the franchise lapsed, and, in the view taken in the majority opinion, Hool conveyed nothing but the physical properties so far as the Realty Company was competent to take them. In Illinois a franchise is unassignable. People ex rel v. Union Gas & Electric Co., supra.
NOTES
[*] Certiorari denied 45 S. Ct. 225, 69 L. Ed. ___.