## NATIONAL BANK *v.* WHITNEY.

1. A national bank may enforce against the mortgagor and parties claiming under him with notice a mortgage of lands executed to it as collateral security for his then existing indebtedness to it, and such as he might thereafter incur.
2. An objection to the taking of such a mortgage as security for future advances can only be urged by the United States.
3. In New York, a mortgage for a past indebtedness, if taken without notice of one for an indebtedness to be subsequently incurred, has precedence, if it be first recorded.
4. Costs are not payable out of the fund in controversy.

ERROR to the Supreme Court of the State of New York. The facts are stated in the opinion of the court.

*Mr. Theodore Bacon* for the plaintiff in error.

*Mr. W. Harris Day,* contra.

MR. JUSTICE FIELD delivered the opinion of the court.

It appears from the record that the defendant Whitney, some time previously to 1871, executed to Maria Crocker a mortgage upon certain real property situated in the county of Genesee, in the State of New York, to secure an indebtedness to her; that in a suit brought for that purpose the mortgage was foreclosed and a decree entered for the sale of the premises; that such sale was had, and the amount received satisfied the debt and left a surplus of over $3,800, which was paid into court. The present controversy is between subsequent mortgagees and judgment creditors for this surplus.

On the 12th of January, 1871, Whitney executed a mortgage upon the same premises to the National Bank of Genesee, providing in terms for the payment of $5,000, one year from its date, with interest, but declaring that it was made as collateral security for the payment of all notes which the bank held at the time against him, and for his other indebtedness then due or thereafter to become due. This mortgage was recorded on the 19th of September, 1872. It subsequently appeared from an examination of the accounts between the parties that his

indebtedness at the date of the mortgage was $3,200, and that this was paid before Sept. 16, 1872.

On this last day Whitney executed two other mortgages upon the same property, one to Homer Bostwick and the other to Edward McCormick. The one to Bostwick was executed as security for the payment of liabilities and indebtedness which already had been or might thereafter be incurred by him on account of Whitney, either by indorsement or otherwise, to an amount not exceeding $2,500. This mortgage was recorded at noon on the day of its execution. The amount of the liability subsequently incurred by Whitney to Bostwick exceeded the sum named. The mortgage to McCormick was executed as security for similar liabilities and indebtedness which might be incurred by him for Whitney, to an amount not exceeding $1,500, and was recorded at forty-five minutes past one of the day of its execution. The amount of liabilities incurred by McCormick for Whitney exceeded the sum named.

It is unnecessary to give the particulars of other subsequent incumbrances, as under no circumstances could any of the surplus be applied to their discharge. In any view that can be taken of the mortgages mentioned, the surplus in controversy will be exhausted by them.

The principal question for our determination relates to the validity of the mortgage of Whitney to the national bank, so far as it applies to future advances to him. His indebtedness existing at the execution of the mortgage has been satisfied. His indebtedness subsequently incurred amounted at the sale of the premises to $5,160. If the mortgage for the future indebtedness can be sustained as a valid instrument for that purpose, the entire surplus will be absorbed for its payment, excepting such portion as may be first payable to McCormick, by reason of the fact that he took his mortgage without notice of the one to the bank. It is contended that the mortgage to the bank, so far as it applies to future advances, is invalid, because a mortgage of that character is prohibited by the national banking law. That law, after in terms authorizing every national banking association to loan money on personal security, declares that it " may purchase, hold, and convey real estate for the following purposes, and for no others : *First,* such as may be

necessary for its immediate accommodation in the transaction of its business; *second*, such as shall be mortgaged to it in good faith by way of security for debts previously contracted; *third*, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings; *fourth*, such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts to it."

The question presented is not an open one in this court. It was determined in the case of *National Bank v. Matthews*, at the October Term of 1878. It there appeared that Matthews and another person had given their joint note to a mercantile company for $15,000, secured by a deed of trust on certain real property in Missouri, executed by Matthews alone. Soon afterwards the company assigned the note and deed of trust to the Union National Bank of St. Louis, to secure a loan made to it at the time. The loan was not paid at its maturity, and the bank directed the trustee to sell the premises. Matthews thereupon filed a bill to enjoin the sale, and obtained a decree for a perpetual injunction, upon the ground that the loan was made upon real security, which was forbidden by the statute. The Supreme Court of the State affirmed the decree, and the case was brought here, where the decree was reversed and the cause remanded, with directions to the court below to dismiss the bill.

In coming to this conclusion this court considered the transaction in two aspects: first, as not being within the letter of the statute, because the deed of trust was not executed *to* the bank; and, second, as a loan upon real-estate security.

Viewed in the first aspect, the court held that as a mortgage the deed of trust was merely an incident to the note, and a right to its benefit, whether it was delivered or not with the note, passed with the transfer of the latter. If the loan had been made upon the note alone, the benefit of the deed as a mortgage would have inured to the bank by operation of law. Of course that which the law would give independently of a direct transfer by the mortgagee, the statute did not intend to defeat because such transfer was made.

Viewed in the second aspect, as a loan upon real-estate

security, the court observed that, so treating it, the consequence insisted upon did not follow; that the statute did not declare such security void, but was silent on the subject; that had Congress so intended it would have been easy to say so, and it can hardly be presumed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. And after citing numerous cases where a disregard of statutory prohibitions has not been held to vitiate the contracts of parties, but only to authorize actions by the government against them, the court held that the prohibitory clause of the banking law did not vitiate real-estate securities taken for loans, and that a disregard of them only laid the association open to proceedings by the government. " The impending danger," said the court, " of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by Congress. That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to enforce its application."

The construction of the act of Congress thus given has been acted upon by the national banks throughout the country ever since it was published. It is not unreasonable to suppose that they have conducted their business and made loans to a large amount in reliance upon it, and that in many cases great injury would follow a departure from it. Judicial decisions affecting the business interests of the country should not be disturbed except for the most cogent reasons, certainly not because of subsequent doubts as to their soundness. The prosperity of a commercial community depends, in a great degree, upon the stability of the rules by which its transactions are governed. If there should be a change, the legislature can make it with infinitely less derangement of those interests than would follow a new ruling of the court, for statutory regulations would operate only in the future.

The decision in the case cited controls the present case, and in conformity with it we must hold that the mortgage to the bank, so far as the subsequent incumbrances are concerned, is to be regarded as a valid security for the future advances to

the mortgagor. Whatever objection there may be to it as security for such advances from the prohibitory provisions of statute, the objection can only be urged by the government. *Fleckner* v. *United States Bank*, 8 Wheat. 338–355.

But it appears from the record that the mortgage to McCormick was taken by him without notice of the prior mortgage to the bank, which had not then been registered. He has, therefore, a right as against the bank to prior payment of the $1,500 and interest, for which amount his mortgage was a lien upon the premises.

Bostwick took his mortgage with notice of the one to the bank. He cannot, therefore, claim any of the surplus until the debt of the bank is paid. The surplus should, therefore, be first applied to McCormick's claim, and the balance to the claim of the bank.

It follows that the decree of the Supreme Court of New York must be reversed, and the case remanded with directions to enter a decree in conformity with this opinion.

*So ordered.*

MR. JUSTICE MILLER and MR. JUSTICE HARLAN dissented.

A petition for a rehearing having been filed, MR. JUSTICE FIELD, at a subsequent day of the term, delivered the opinion of the court.

By the decision in this case we held that, in the distribution of the surplus moneys in court, the claim of McCormick should be paid before that of the bank. He took his mortgage without notice of the one to the bank, which had not been registered. The bank now asks a rehearing of the case on this point, contending that, under the decisions of the New York courts, the priority of its mortgage cannot be displaced. It cites the statute of the State to show that the recording act gives priority only to the mortgage first recorded, when that is executed for a valuable consideration, which, according to those decisions, means some new consideration advanced at the time; and that a mortgage for a pre-existing indebtedness is not protected by a prior record, against a non-recorded mortgage for value. Here the mortgage to McCormick was given to secure

— to the extent of $1,500 — a previous liability and indebtedness, and such as might be subsequently incurred. The previous indebtedness at the time equalled the whole amount of the intended security.

There would be force in the position of the bank if its own mortgage stood in any better condition. When the McCormick mortgage was executed — Sept. 16, 1872 — the indebtedness of Whitney to the bank was paid, and his mortgage remained in force only for any future indebtedness which he might incur. For such future indebtedness it could not cut out the mortgage to McCormick, executed for an existing indebtedness, and of which mortgage the bank had notice. For advances afterwards made, the mortgage to the bank was a subsequent incumbrance.

As between two mortgages, — one for a past indebtedness, and one for an indebtedness to be subsequently incurred, — the one for the past indebtedness must have precedence, if first recorded.

The petition for a rehearing by the bank must, therefore, be denied.

The petition of McCormick to be allowed costs out of the fund in court must, according to the usual practice of the court in such cases, be also denied. His costs are chargeable against the bank which contested his right to be paid out of the proceeds in court. If paid out of the fund, they would reduce by their amount the moneys properly applicable to the indebtedness of Whitney.

*Petition denied.*