UNION NATIONAL BANK v. ROWAN.

1. A draft for a sum stated, drawn by a seller against a buyer in favor of a national bank, by whom it is discounted or purchased, with the bill of lading attached, passes title to the goods therein mentioned to the bank; and the bank may recover them, upon dishonor of the draft, from a sheriff who had seized the goods as the property of the seller under attachment subsequent to the purchase by the bank.
2. A draft so drawn is a bill of exchange, and its purchase by a national bank is not beyond the powers conferred by acts of Congress upon national banks.

Before COTHRAN, J., Richland, July, 1884.

The opinion states the case.

*Mr. W. S. Monteith,* for appellants.

*Messrs. Clark & Muller,* contra.

August 1, 1885.   The opinion of the court was delivered by
MR. JUSTICE MCIVER.   The facts of this case, so far as neces-
sary to a proper understanding of the points raised by this
appeal, are substantially as follows:   The defendants, Lorick &
Lowrance, merchants, doing business in Columbia, ordered from
Hord Bros. & Co., dealers in grain and provisions in Chicago, a
lot of bran and oats.   At the time of the shipment of these
articles Hord Bros. & Co. drew drafts on Lorick & Lowrance for
the price thereof, which were either discounted or sold to the
plaintiff, upon the security of the bills of lading which, at the
same time, were endorsed by Hord Bros. & Co. and delivered to
plaintiff.   These drafts were sent by the plaintiff, with the bills
of lading attached, to its agent in Columbia, the Carolina Na-
tional Bank, to be presented to the drawees for acceptance, and
when so presented were not accepted.   When the bran and oats
reached Columbia they were seized by the defendant, Rowan, as
sheriff, under a warrant of attachment sued out by the defendants,
Lorick & Lowrance, on a claim which they alleged was due them
by Hord Bros. & Co., growing out of some previous transactions.
Thereupon this action was brought by the plaintiff to recover
possession of the bran and oats.

It is not denied that the endorsement and delivery of the bills
of lading to the plaintiff passed the title and right to the posses-
sion of the articles mentioned therein to the plaintiff, provided
the transaction was valid and legal, and this having been done
prior to the seizure under the warrant of attachment, the plain-
tiff would have a right to recover.   It is contended, however, by
the appellants that under the national banking law of the United
States, the plaintiff had no authority to purchase the drafts with
the bills of lading attached, and that, therefore, the transaction
was *ultra vires*, illegal, and passed no title to the plaintiff.   Ac-
cordingly the Circuit Judge was requested by the defendants to
instruct the jury, "that it was for the jury to decide whether
plaintiff purchased or discounted the drafts, and that if they
came to the conclusion that the plaintiff purchased the drafts
with the bills of lading, then the transaction was *ultra vires*, and
the plaintiff could not recover."   To the refusal of this request
defendants duly excepted, and by their exceptions, the first

having been abandoned, practically raise two questions of law: 1st. Whether the purchase of the draft, with the bills of lading attached, by the plaintiff was *ultra vires.* 2d. If it was, does that defeat the plaintiff's right to recover?

It seems to us that as to the first question there can be no doubt. These papers, though called drafts, are in fact bills of exchange, as they fill any definition given of that species of instrument. That learned commentator, Mr. Chitty, commences his treatise on bills of exchange with these words: "A bill of exchange is defined by Mr. Justice Blackstone to be an open letter of request, or an order from one person to another, desiring him to pay on his account a sum of money therein mentioned to a third person." These papers certainly are open letters of request or orders from Hord Bros. & Co. to Lorick & Lowrance, desiring them to pay on their account the sums of money therein mentioned to a third person, as is manifest from their form, which is as follows:

"$270.66.                    CHICAGO, Dec. 3, 1883.

"At sight, N. Y. Exchange, pay to the order of Jno. J. P. Odell, cashier, two hundred and seventy 66-100 dollars, value received, and charge to account of Lorick & Lowrance, Columbia, S. C.                    HORD BROS. & CO."

Now, as a national bank is expressly authorized by the act of Congress to buy and sell exchange, there cannot be a doubt that the plaintiff had a right to purchase these papers, called drafts, as they were in fact bills of exchange, and hence it was wholly immaterial to inquire whether the plaintiff bought or discounted these papers. Indeed, it seems to us that any other view would, to some extent at least, defeat the very object for which a bank is established. As we understand it, one of the main purposes of these institutions is to afford the means of moving the produce of the country by facilitating exchanges, and such transactions as the one now in question are just what would most likely effect these ends. We think, therefore, that the plaintiff bank, in buying these bills of exchange, even if it did buy them, was not only not going beyond the authority vested in it by the act of Congress, but, on the contrary, was simply doing one of the things

for which it was constituted. It is apparent, therefore, that the authorities cited by the counsel for appellants, tending to show that a national bank has no authority under the act of Congress to buy promissory notes, have no application to this case, and need not therefore be considered.

Under this view, the second question raised by this appeal cannot arise, though we may say that this question also has been determined adversely to the view of the appellants by at least two cases (*National Bank* v. *Matthews*, 98 *U. S.*, 621, and *National Bank* v. *Whitney*, 103 *U. S.*, 99), decided by the Supreme Court of the United States, the tribunal invested with jurisdiction to determine finally the proper construction of an act of Congress.

The judgment of this court is that the judgment of the Circuit Court be affirmed.