Argued December 4, affirmed December 11, 1917.

## COLUMBIA ROCK & SAND CO. *v.* HIBERNIA SAVINGS BANK.*

(169 Pac. 88.)

**Statutes—Construction—Adoption.**

1. Where a statute of one state or jurisdiction is subsequently adopted and enacted by the legislature of another state or jurisdiction, it will be assumed that the construction placed on such statute by the courts of the jurisdiction from whence it was taken was also adopted.

[As to construction to be given to adopted statutes, see note in Ann. Cas. 1917B, 651.]

**Banks and Banking—Acquisition of Stock—Statute.**

2. Section 4569, subdivision "b," L. O. L., as amended by General Laws of 1915, page 432, declares that no state bank shall accept as collateral or be the purchaser of its own capital stock except in cases where the taking of such collateral or such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith and in such cases unless the full payment of the debt is made, such

---

*On power of corporation to deal in its own stock, see note in 18 L. R. A. 254.

As to right of corporation to purchase its own shares of stock, see notes in 61 L. R. A. 621; 25 L. R. A. (N. S.) 50; 30 L. R. A. (N. S.) 694; 44 L. R. A. (N. S.) 156; L. R. A. 1916F, 286.    REPORTER.

stock shall be sold by the bank within six months from the date it was received as collateral or acquired by purchase. Section 4583, subdivision "d," L. O. L., as amended by General Laws of 1911, page 242, declares that if any officer, etc., of any bank shall willfully and knowingly violate any of the provisions of the act for which a penalty is not provided, he shall be deemed guilty of a misdemeanor. National Banking Act declares that no association shall make any loan or discount on the security of the shares of its own capital stock, or be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and such stock shall within six months from the time of its purchase be sold or disposed of or in default a receiver may be appointed. *Held,* that as the state statute which was last enacted was obviously a copy of the federal act, and decisions of the federal courts construing the federal act, to the effect that only the United States could take advantage of the violation of the provision, must be treated as also adopted, a state bank which received its own stock as collateral for a pre-existing debt may enforce its lien as against subsequent lienholders, though it delayed disposing of the collateral more than six months.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit in the nature of a creditor's bill to subject certain securities held by the defendant bank to execution under a judgment obtained by plaintiff against Edward and Honora Killfeather.

The facts, briefly stated, are as follows: On September 4, 1912, the defendant Honora Killfeather for a full consideration, executed and delivered to the defendant Hibernia Savings Bank, her promissory note for the sum of $4,000, payable upon demand, and on which there was still unpaid at the commencement of this suit a balance of $2,319.05. On April 23, 1913, said defendant Honora Killfeather, assigned to the defendant Hibernia Savings Bank, ten shares of its capital stock at the par value of $100 per share, as security for the unpaid balance due on the $4,000 note, and to secure any further indebtedness that might be contracted by her, which further indebtedness at the date of the commencement of this suit consisted of two overdue promissory notes, one for $167.72 and the other

for $103.96, with interest from date at 8 per cent per annum. On June 8, 1915, Honora Killfeather assigned all her interest in the shares of stock hypothecated to the bank to defendant J. C. Bayer to secure payment of the sum of $170 borrowed by her and her husband, Edward Killfeather, from Bayer. Bayer notified the bank of such assignment and was informed that it would hold the stock for him, subject, however, to its own lien. On November 14, 1914, the plaintiff secured a judgment against the Killfeathers for $535.50 and costs, and after other proceedings caused notice of garnishment to be served upon the bank, which answered that it did not have possession of any money, shares of stock, or other property belonging to defendant on execution, and owed them nothing except that there was a balance of 18 cents to the credit of Honora Killfeather, and also that it had in its possession the ten shares of stock hereinbefore mentioned, upon which it claimed a lien for the unpaid balance due it upon the promissory notes before mentioned. Therefore, plaintiff brought this suit, which also involves certain real estate mortgages given by the Killfeathers to the bank but which cut no figure in the question raised upon this appeal. The Circuit Court found that the bank had a first lien upon the shares of stock for the unpaid balance due it, and that Bayer's lien was also prior to the lien of plaintiff's levy, from which decree plaintiff appeals.

Affirmed.

For appellant there was a brief and an oral argument by *Mr. John K. Kollock.*

For respondent, Hibernia Savings Bank, there was a brief over the names of *Mr. Arthur C. Spencer* and

*Mr. John P. Hannon,* with an oral argument by *Mr. Spencer.*

No appearance for other respondents.

Opinion by MR. CHIEF JUSTICE McBRIDE.

It is substantially admitted that the amount claimed by the bank is an actual *bona fide* indebtedness contracted prior in point of time to that upon which plaintiff obtained judgment, and that the original hypothecation of the ten shares of stock was made *bona fide* to it to secure the payment of the sum of $2,319.05 then overdue, and that the clause relating to "subsequently accruing indebtedness" only extends in effect to the two smaller notes, $167.72 and $103.93 respectively.   It is also contended that Bayer has a lien upon the stock for the amount due him so that his relation to the transaction need not be further considered. Plaintiff's right to priority over the bank depends upon whether by failing to sell the securities deposited with it, within six months from the date of such deposit, it has lost its lien upon them.   This depends upon the construction of Section 4569, subd. b, L. O. L., as amended by Gen. Laws 1915, p. 432, which reads as follows:

"No State bank shall accept as collateral or be the purchaser of its own capital stock, except in cases where the taking of such collateral, or such purchase, shall be necessary to prevent loss upon a debt previously contracted in good faith, and in such cases, unless full payment of such debt is made, such stock shall be sold by the bank within six months from the date it was received as collateral or acquired by purchase."

The question raised by appellant here has frequently been passed upon in cases arising under a provision of the National Banking Act, which is practically iden-

tical with the section of our Banking Act above quoted. The provision in the Federal Act is as follows:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association, according to section fifty-two hundred and thirty-four."

It will be seen the statutes are substantially the same, the Oregon Act being practically taken from the Federal Act, the only difference being that the section last quoted provides, in terms, that in case of a violation of the section a receiver may be appointed to close up the business of the association, but this difference is only apparent, as Section 4583, subdivision d, L. O. L., as amended (Gen. Laws 1911, p. 242), provides that if any officer, manager, director, owner or employee of any bank shall willfully and knowingly violate any of the provisions of the Act for which a penalty is not expressly provided, he shall be deemed guilty of a misdemeanor and subject to fine or imprisonment. So in effect, it appears that the State Act and the Federal Act are practically identical in all particulars.

1, 2. The clause in our statute before adverted to, which went through various amendments after the original Banking Act was passed, was evidently enacted in its present form to bring it into harmony with the federal statute, and being an adoption of that statute is subject to the general rule that where the statute of one state or jurisdiction is subsequently adopted and

enacted by the legislature of another state or jurisdiction, the courts of the latter will usually assume that it has been so adopted with the construction placed upon it by the courts of the jurisdiction from which it was taken: 36 Cyc. 1154, and cases therein cited. This and similar provisions of the Federal Banking Law had been construed by the courts of the United States before its re-enactment here in 1915, and it is only fair to presume that our legislature adopted the section with the construction put upon it by the courts of the United States, and these had held with substantial unanimity that only the Government of the United States could take advantage of a violation of this and similar provisions of the statute: *National Bank* v. *Matthews,* 98 U. S. 621 (25 L. Ed. 188) ; *National Bank* v. *Whitney,* 103 U. S. 99 (26 L. Ed. 443) ; *Gold Mining Co.* v. *National Bank,* 96 U. S. 640 (24 L. Ed. 648) ; *Reynolds* v. *Crawfordsville Nat. Bank,* 112 U. S. 405 (28 L. Ed. 733, 5 Sup. Ct. Rep. 213) ; *Kerfoot* v. *Farmers & Merchants' Bk.,* 218 U. S. 281 (54 L. Ed. 1042, 31 Sup. Ct. Rep. 14).

The construction of similar provisions of the federal banking statute was adverted to in *Portland Nat. Bank* v. *Scott,* 20 Or. 421 (26 Pac. 276), which was an action by the bank to recover upon a loan made by it in excess of the amount permitted by the federal statutes. This court called attention to federal decisions holding that such contracts were not void and declared its obligation to follow them. The decision is not valuable in itself, but the fact of its having been rendered and reported long prior to the amended Act of 1915, *supra,* indicates that the framers of that amendment could not have been ignorant of the construction placed upon these provisions of the Federal Banking Act by the courts of the jurisdiction where

they originated, and this renders doubly strong the presumption that it was the legislative intent to adopt them as there construed, otherwise it would have been the plain and natural course to have added to the statute express words indicating that all contracts prohibited by the section quoted should be deemed void, and that no recovery should be had thereon. This line of reasoning is pursued by the Supreme Court of the United States in *National Bank* v. *Whitney,* 103 U. S. 99 (26 L. Ed. 443), the court saying:

"The statute did not declare such security void but was silent on the subject; that had Congress so intended, it would have been easy to say so, and it can hardly be presumed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision."

It is far from being the universal rule that a disregard of legal provisions relating to contracts, renders them absolutely void and this is especially true when the matter is litigated in the forum of equity, which is always reluctant to enforce a forfeiture. In *Harris* v. *Runnels,* 12 How. 53 (U. S.) 79 (13 L. Ed. 901), it is said the statute must be examined as a whole, to find out whether or not the makers meant that a contract in contravention of it was to be void or not to be enforced in a court of justice. This is the rule applied by Judge DEADY *In re Comstock,* 3 Sawy. 218, (Fed. Cas. No. 3078), in which case the statute provided that "A foreign corporation before transacting business in this state must duly execute and acknowledge a power of attorney" etc. The statute provided no penalty for a violation of this requirement. Holding that a foreign corporation to whom Comstock had contracted a debt before it had filed the required

power of attorney, could not enforce collection, Judge DEADY said:

"Whilst it is manifest to the most ordinary observation that it was the intention of the legislature to permit the transaction of business in this state by a foreign corporation only upon the terms provided in the Act, yet as it contains no provision imposing a specific penalty for neglect to appoint an attorney as required, or authorizing a proceeding by the state against such corporation for illegal exercise of corporate powers therein, unless the appointment of an attorney is held to be a condition precedent to its rights to do business in the state, the act is nugatory."

It will be noticed from a perusal of the opinion that the learned judge lays emphasis upon the fact that no penalty was provided for violation of the act, and that the defendant being a foreign corporation could only be reached by declaring contracts made under the circumstances to be void and unenforceable. Here the case is different. The bank is a domestic corporation, subject to be dissolved by suit by the state for violation of the conditions of its existence and the officers subject to heavy penalties for a disregard of any of the provisions of the statute.

This court in *Bank of British Columbia* v. *Page,* 6 Or. 431, 483, which was a case involving the construction of the same statute, adopted the same line of reasoning, saying:

"The general rule is that a contract in violation of law is void. The only exception to the rule is that when a law imposes a penalty for the prohibited act, and it clearly appears that the legislature intended no more than to impose a penalty for the violation of the law, a contract made in violation of such a statute is not void.

"We do not think this statute belongs to the excepted class. The legislature has prohibited the con-

tract. It has provided no penalty for its violation. Unless the contract shall be held void, the statute is of no effect. We do not think such was the intent of the legislature.''

As before remarked, we are of the opinion that when the legislature copied the provision under discussion from the United States statutes, it manifested a plain intent to adopt it with the construction theretofore given it by the courts of the United States, and that construction is admittedly contrary to the contention of plaintiff upon this appeal. We are aware that many of the state courts have announced a different doctrine upon similar statutes. Concerning these decisions we may quote from Morse on Banks and Banking, subdivision c, section 75, where speaking of the ruling in the *Matthews Case, supra:*

''A number of state decisions had ruled otherwise on this point but these decisions are now fossils, buried deep under this recent deposit.''

The question as it arises upon our statute is a new one in this state, and has been presented by counsel for appellant with much learning and accompanied with the citation of many authorities which it would be a pleasure to discuss in detail, did the business of this court permit. While not here discussed they have all been considered, but we deem the reasons here adduced controlling in this case and the decree of the Circuit Court will therefore be affirmed.

AFFIRMED.

Mr. Justice Moore, Mr. Justice Burnett and Mr. Justice McCamant concur.