IOWA STATE & SAVINGS BANK ET AL., APPELLANTS, V. CITY NATIONAL BANK OF OMAHA ET AL., APPELLEES.

FILED JULY 7, 1921.    No. 21189.

1. **Banks and Banking: PURCHASE OF STOCK: VALIDITY.** Where the directors of a national bank that is in failing circumstances purchase shares of its capital stock for the bank from other shareholders in violation of section 9762, U. S. Comp St. 1918, the rights of innocent holders for value not having intervened, the validity of such transaction "can be questioned only by the United States, and not by private parties." *Thompson v. St. Nicholas Nat. Bank*, 146 U. S. 240, 251.

2. **Corporations: ACTION OF MAJORITY STOCKHOLDERS.** The action of a majority of the stockholders of a corporation must govern when such action is within its expressed or implied powers and does not violate any contract rights of the other stockholders.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Gaines, Van Orsdel & Gaines*, for appellants.

*John J. Sullivan* and *George B. Thummel, contra.*

Heard before MORRISSEY, C.J., ALDRICH, DEAN, FLANSBURG, LETTON and ROSE, JJ.

DEAN, J.

The Iowa State & Savings Bank and the Lake Villa Trust & Savings Bank are, respectively, Iowa and Illinois corporations. The Iowa bank is the holder of 100 shares of the capital stock of the defendant City National Bank of Omaha. The Illinois bank holds 25 shares of its capital stock. Both banks hold the stock as collateral security for loans made by them to borrowers who are now insolvent, the borrowers having transferred the stock as collateral security for their respective loans. August 3, 1918, as alleged by plaintiffs, they began this action on behalf of themselves, and other stockholders of the City National Bank, asking that the court require that an accounting be had of the amount due on two certain prom-

issory notes executed by Peter F. Petersen and Ivy O'Flyng in the principal sum of $24,117.80 each, aggregating $48,235.60, and payable to the order of the defendant bank. Plaintiffs allege that the Petersen and O'Flyng notes were wrongfully canceled, and payment released, by the board of directors of the City National Bank. They ask that the court "render judgment against * * * Petersen * * * and against the said Ivy O'Flyng for the balance due" on their respective notes, and also against certain directors of the defendant City National Bank, "who have wrongfully conspired with the said parties to defeat the collection of said notes." The defendant bank contends, in substance, that the Petersen and O'Flyng notes were "a matter of bookkeeping;" that they were merely accommodation notes, and that neither the makers nor the bank were at any time liable thereon. When the hearing was concluded, the court rendered judgment in favor of defendants, dismissed the suit, and plaintiffs appealed.

Substantially these material facts appear. In 1914 the defendant City National Bank was in failing circumstances. When some of its stockholders discovered the true condition of the bank, and that it was probably on the verge of failure, they began to offer their stock for sale at a rate much below its face value. The bank officials realized that such conduct would insure its failure, and, in order that this might be prevented, they purchased some of the stock that was offered for sale by dissatisfied stockholders. It was for this purpose that the notes in suit were procured, so that from the proceeds of the sale of the notes money might be obtained with which to buy the capital stock of the bank. It is alleged the notes were subsequently redeemed.

October 15, 1915, to the end that the City National Bank might realize on its assets, pay its debts and distribute among the stockholders the assets that remained, the bank went into voluntary liquidation. At that time, as alleged by defendants, "the bank held about 400 shares

of its own capital stock, purchased by it several years prior to that time with its own money." The assets, for the most part, were sold to the State Bank of Omaha. The City National, however, retained $600,000 of its assets for the purpose of distribution among its stockholders. However, among the assets that it sold to the State Bank were included the two notes in question. Within a month or six weeks thereafter the City National, as alleged, "in recognition of the fact that it was not the owner of said notes and had given no consideration therefor, afterwards, with the consent of the State Bank of Omaha substituted its own obligation therefor, and the said notes of Petersen and O'Flyng were thereupon released, canceled and surrendered to the makers thereof. Later on, the defendant bank paid off, with its own funds, its obligations so substituted."

The facts leading up to the execution of the notes in question, as contended by defendants, are substantially these. A syndicate, as it is called in the briefs, was formed, consisting of certain of the stockholders and directors of the City National Bank. The object of this organization was, if possible, to save the failing bank. To this end they procured the execution of the two notes as accommodation notes. Subsequently the notes were placed in the City National Bank as apparent assets. It seems that neither the comptroller of the currency nor the bank examiners who were working under his direction were informed that the notes did not represent a *bona fide* transaction and that they were not in fact assets of the bank. However, when this suit was brought the defendants resisted all attempts looking toward enforced payment on the grounds herein stated, namely, that the notes were merely accommodation notes and that liability did not attach thereto.

It may be noted in passing that an agreement was entered into with Petersen and O'Flyng by certain of the directors of the defendant bank, whereby it was provided that all of the parties to the agreement should share

equally any liability that might in any contingency attach to the notes.

Plaintiffs argue that, under the facts, the defendants are estopped from defending against liability, and, in the expressed belief that the notes were a valid obligation against the makers, in October, 1917, and again in February, 1918, demanded that the City National directors begin an action on both notes to recover the full face value with accrued interest. The demand being ignored, this suit for an accounting was begun.

Plaintiffs allege generally that the affairs of the City National Bank were irregularly and unlawfully conducted, all to the financial detriment of the holders of its capital stock. Among other acts of alleged misfeasance they allege the execution of a note in the principal sum of $29,360.61, by a former director, as trustee, with the view of using the proceeds of the note in buying stock of the City National from the dissatisfied and alarmed stockholders. However, we do not find it necessary further to discuss the trustee note. The important question is whether the Petersen and O'Flyng notes were accommodation notes and whether they were at any time valid obligations against the makers.

Plaintiffs contend that the surrender of the notes by the directors was fraudulent as against them and as against the other stockholders, and that, as a result of that transaction, the value of the stock was depreciated in a sum equal to the value of the notes. They argue that such sum as they recover, if any, should become a part of the assets of the defendant bank for distribution among its creditors and stockholders. Plaintiffs argue, too, that, under the facts, defendants are estopped from defending against liability. They point out that under section 9762, U. S. Comp. St. 1918, the purchase of its own stock by a national bank is prohibited. The act, so far as applicable, follows: "No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such

security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith."

It appears in the present case, as shown by the weight of the evidence, that the rights of innocent purchasers for value have not intervened, so that, in the present state of the record, their argument is not supported by the authorities. On this point, even where fraud was charged, it has been said: "A note, executed by defendant for accommodation and without consideration to enable bank officials to conceal their defalcations from depositors and governmental inspectors, is tainted with fraud; so, the rights of no innocent purchaser for value having intervened, it cannot be enforced by the bank or its receiver, though the transaction was such that defendant must have known that the purpose of the note was to conceal the bank's financial condition." *Cutler v. Fry*, 240 Fed. 238. See, also, *Peterson v. Tillinghast*, 192 Fed. 287; *Leonard v. State Exchange Bank*, 236 Fed. 316.

It has been held that private parties cannot invoke the provisions of the national banking act, as plaintiffs in the present case have attempted to do, and that any infringement of the act in question by a national bank is a matter for the consideration of the federal government. In *Thompson v. St. Nicholas Nat. Bank*, 146 U. S. 240, at page 251, on this point it is said: "Moreover, it has been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties. *National Bank v. Matthews*, 98 U. S. 621; *National Bank v. Whitney*, 103 U. S. 99; *National Bank of Xenia v. Stewart*, 107 U. S. 676."

Besides this, it appears in the present case that at a meeting of the stockholders a motion was made and seconded that some action be taken by the directors to recover the amount of the canceled notes of Petersen and

O'Flyng. When the motion was put to a vote it received no votes other than those of the two stockholders who were its sponsors. It may be added that, not only does it appear that the rights of innocent persons have not intervened, but there is evidence tending to show that the cancelation and surrender of the Petersen and O'Flyng notes was ratified at a meeting of the stockholders at which approximately 85 or 90 per cent. of the capital stock of the City National Bank was represented.

In 6 Fletcher, Cyclopedia Corporations, sec. 3992, p. 6797, it is said:

" 'The majority rules' is the basic rule as to the internal affairs of a corporation, so long as the acts of the corporation are within its express or implied powers. It is of no moment that the acts of the majority are unwise or inexpedient, so long as they act in good faith. When the management of a corporation is vested in the stockholders collectively as constituting the corporation, and they act at a meeting called and conducted in accordance with the charter and by-laws of the corporation, and differences of opinion arise as to the policy to be pursued, the vote of the majority must govern, where the majority act in good faith, and within the powers of the corporation, and do not violate any contract rights of the other stockholders. No principle in the law of corporations is better settled than the principle that every person who subscribes for or purchases shares in a corporation, or otherwise acquires shares therein, impliedly agrees that, upon any matter which comes within the powers expressly or impliedly conferred upon the corporation by its charter, he will be bound by the will of the majority, so long as they act in good faith, and according to law."

We have tried the case *de novo*, and, in view of the evidence, and of the federal authorities applicable thereto, we conclude that the judgment is right. It is therefore in all things

AFFIRMED.

DAY, J., not sitting.