**GANADO LAND CO. v. SMITH et al.***
(No. 8908.)

(Court of Civil Appeals of Texas. Galveston.
Jan. 7, 1927. Rehearing Denied
Jan. 27, 1927.)

1. Guaranty ⬅71—Defendant held guarantor
of payment of note without right of surety,
under statute, to demand that holder sue
maker thereon (Rev. St. 1911, art. 6329).

Defendant, having sold land, and demanded
from purchasers note, payable to third persons,
which he transferred to payee for value re-
ceived, and, as indorser, guaranteed payment
at maturity or thereafter, waiving demand,
protest, and notice of nonpayment, *held* a guar-
antor of absolute payment without rights as
surety, under Rev. St. 1911, art. 6329, to de-
mand that holder sue maker thereon.

2. Guaranty ⬅70—Delay, in suit on note,
held not defense, where no condition was
known to holder reducing security which was
unknown to guarantor of payment.

Delay, in suit on vendor's lien note of
which defendant was guarantor, of payment
until four years after maturity, *held* no de-
fense to suit against guarantor thereon, where
there was no condition known to any holder
which would reduce value of security which
was not known to defendant.

3. Corporations ⬅387(4)—That purchase of
vendor's lien note by land company organized
to promote immigration was ultra vires could
not be raised by debtors (Vernon's Sayles'
Ann. Civ. St. 1914, arts. 1164, 1167, 1193).

Since, where corporation is incompetent by
charter to take title to property, sovereign
alone can object, that purchase of note with
lien retained to secure payment by land com-
pany organized to promote immigration was
ultra vires could not, in view of Vernon's
Sayles' Ann. Civ. St. 1914, arts. 1164, 1167,
1193, be raised by debtors, in corporation's suit
on note.

4. Vendor and purchaser ⬅278—Facts held
to show plaintiff became holder of vendor's
lien note before petition thereon was filed
within four-year limitation.

Facts *held* to show that vendor's lien note,
sued on, was transferred to plaintiff and be-
came its property before petition was filed
within four-year limitation.

Appeal from District Court, Jackson Coun-
ty; John M. Green, Judge.

Action by the Ganado Land Company
against John S. Smith and others. Judg-
ment for plaintiff against defendant Smith
only. From the judgment for defendant J.
E. Harmon, plaintiff appeals, and defendants
Smith and Harmon file cross-assignments of
error. Reversed and rendered in part. Af-
firmed in part.

John T. Vance, of Edna, for appellant.
Rose & Sample, of Edna, for appellees.

LANE, J. On the 17th day of October,
1918, J. E. Harmon, one of the appellees in
the present case, by his deed of that date,
conveyed to John S. Smith, another of the ap-
pellees, 57.33 acres of land in Jackson county,
Tex. The consideration expressed in the
deed was $1,000 cash, and one note for $933.-
30 of even date with deed, payable to Agathe
Schadwitz or order two years after its date.
A vendor's lien to secure the payment of the
note was expressed in both the deed and note.
On the back of the note the following indorse-
ment appears:

"For value received, I hereby sell, trans-
fer, and assign to Agathe Schadwitz the within
note, together with the vendor's lien on the
property securing the same, and, as indorser,
I guarantee the payment of the within note at
maturity, or on demand at any time after ma-
turity, waiving demand, protest, and notice of
nonpayment thereof.　　J. E. Harmon."

The note was made payable to Mrs. Schad-
witz, to whom J. E. Harmon was indebted,
as a credit on such indebtedness. In due
course of trade said note was transferred to
and became the property of the Bankers'
Investment Alliance of Seguin, Tex. After
such transfer, to wit, on the 26th day of De-
cember, 1922, C. H. Donegan, president of
the Bankers' Investment Alliance, hereinaft-
er referred to as the "Seguin Bank," by let-
ter, sent the note to the Citizens' State Bank
of Ganado, saying that they had written to
Mr. Fred Mauritz, to whom they had trans-
ferred the note, and requesting that the bank
notify him that the note had been sent to
it, and instructed the bank to deliver the
note and transfer to Mauritz upon payment
of $933.30. Mauritz refused to make the
payment and take the note, and on the 7th
day of July, 1923, wrote the Seguin Bank
to that effect, and said to the bank that, if
it would advise him as to what it would take
for the note, he would take the matter of
its purchase under consideration, and saying
further:

"*We* will have to foreclose, or get a deed
from Mr. Smith, if we do not otherwise get
matters shaped up. There is quite a bill of
taxes run up on the land, and if you make *us* a
proposition, please take that into consider-
ation."

On the 14th day of July, 1923, the Ganado
Land Company wrote the Seguin Bank, say-
ing that Mr. Fred Mauritz had handed to the
Ganado Land Company a letter from it, with
the request that the Ganado Land Company
investigate the matter of the purchase of the
note, and saying further that the Seguin
Bank would hear from Mr. Mauritz in a
day or two.

On the 29th day of October, 1923, the Se-
guin Bank wrote Fred Mauritz that it would
take $573.30, less taxes owing on the 57.33
acres of land for the note. In reply to the

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 23, 1927.

above-mentioned letter T. N. Mauritz, under the firm name of "Mauritz Bros.," a firm composed of T. N. and Fred Mauritz, wrote the Seguin Bank, acknowledging receipt of its letter of October 29, 1923, and said that they had decided to take over the 57 acres of land; requested the bank to prepare necessary papers to transfer the note, and send the same to the Citizens' State Bank of Ganado.

On December 28, 1923, the Seguin Bank wrote the Ganado Bank, saying that at the request of "Mauritz Bros." it was sending a transfer of the note and the vendor's lien on the 57⅓ acres of land, dated October 17, 1918, to Fred Mauritz, and saying that the sum to be paid by Mauritz was $573.33, less taxes due on the land. On the same day, said Seguin Bank wrote Fred Mauritz, informing him that it had sent said transfer to the Ganado Bank.

On August 2, 1924, the president of the Seguin Bank wrote the Ganado Land Company, appellant in the present case, saying:

"We will sell you the John Smith land notes real cheap, just as cheap as we offered them to Mauritz Bros., which was $10 per acre for the land, *and the papers are at the bank there at Ganado, and transfer already made to Mauritz, and you can get them to transfer to you.*" (Italics ours.)

To the letter last mentioned, the Ganado Land Company, on August 12, 1924, wrote the Seguin Bank that it was working on the proposed transaction and thought that something definite would soon take place. On September 1, 1924, the Seguin Bank acknowledged receipt of the letter last mentioned, asking the Ganado Land Company if it had "so far done anything," and saying that it, the bank, would have to bring suit very soon, unless Smith would convey the land to it, and therefore it was writing to the Ganado Bank to send the note and other papers back to it, in case nothing was done in the next few days, so that it would be able to file the necessary suit to protect itself against the note becoming barred by limitation, in case the conveyance from Smith could not be obtained. It further asked the Ganado Land Company to confer with Fred Mauritz as to the status of the matter.

Several letters passed between the Seguin Bank and parties at Ganado, including the Ganado Land Company, from September 1, 1923, to September 4, 1923, the contents of which will not be stated, as we do not think they throw any necessary light on the matters involved. But on the 4th day of September, 1923, Mr. Donegan, for the Seguin Bank, wrote the Ganado State Bank, saying:

"I am sending the land company a carbon of this letter for their information. We also notice that the note will not be barred until October 17th, and will be willing for the papers to be held 20 days from this date awaiting developments, and with the idea that something may be completed before then."

After the receipt by the Ganado Bank of the letter last mentioned, Fred Mauritz, a director of the Ganado Land Company, to whom the note had been transferred tentatively prior to the negotiations between the Seguin Bank and the Ganado Land Company relative to the sale of the note to said Land Company, before the present suit was brought, on September 6, 1924, transferred the note to the Ganado Land Company, and thereafter, on the 23d day of September, 1924, T. N. Mauritz, as president of the Ganado Land Company, wrote Donegan as follows:

"We are handing you herein our draft in amount of $188.25, and which is to take up the note against the John Smith land.

"The Ganado Land Company finally decided to take over the note and they have figured that on the basis of $10 per acre for the land, less taxes accrued, leaves $188.25 due you, and which is per your former proposal.

"We are inclosing herein statement showing what the taxes are.

"Very truly,

"T. N. Mauritz, President."

Thus it is shown that the Ganado Land Company, within the 20 days allowed it for acceptance of the proposition of the Seguin Bank, and before the suit was filed, became the owner of the note, and after such acceptance, and within the 20 days so allowed, notified the Seguin Bank that it had accepted its proposition and was sending with such notice the purchase price of the note.

On the 6th day of September, 1924, and after the note hereinbefore mentioned had been transferred to the Ganado Land Company, a Texas corporation, said corporation filed its original petition complaining of John S. Smith and wife, Johnie, and J. E. Harmon. Its suit was for recovery upon the note hereinbefore described, which was set out in full in the petition, and upon the guaranty on the back of same, and for a foreclosure of the vendor's lien retained on the 57⅓ acres of land, described in the petition, to secure payment of said note.

On the day the petition was filed the plaintiff sued out a writ of attachment which was levied on certain lands belonging to J. E. Harmon. On the 18th day of February, 1925, the plaintiff filed its first amended petition upon which it went to trial, which made substantially the same allegations and prayer as was made in the original petition, and, in addition thereto, it prayed for a foreclosure of its attachment lien on the land of J. E. Harmon.

On the 28th day of September, 1925, Smith and wife filed their answer, upon which they went to trial, and therein prayed that the suit of plaintiff be abated, because (1) plaintiff sued as "the Ganado Land Company," when its real name is "Ganado Land Company"; (2) that at the time of the filing of

the original petition the plaintiff was not the owner of the note sued on, nor the lien retained to secure same; (3) that the plaintiff was a corporation organized for the purpose of promotion of immigration, and therefore its acquisition of the note and lien was ultra vires and void. They demurred generally to the petition. They specially excepted to plaintiff's first amended petition filed on the 18th day of February, 1925, upon the grounds that it showed on its face that the note sued upon and the lien retained to secure its payment was barred by the four years' statute of limitation at the time said amended petition was filed. They pleaded a general denial, coverture of the wife at the time of execution of the note as against a personal judgment against her, and limitation of four years in bar of any recovery.

On the 28th day of September, 1925, defendant J. E. Harmon filed his answer, adopting the answer of Smith and wife, and, in addition thereto, specially excepted to the petition upon the ground that it was not shown upon its face that his guaranty on the note was made before the note matured, or that the plaintiff was a bona fide holder of the note in due course, or that he had waived the requirements that in suits against an indorser the holder of the indorsed note should bring suit at either the first or second term of court.

By paragraph 9 of his answer, he alleged as a defense that his guaranty of the payment of the note was without consideration; that at the time the note became due and payable, and for one year thereafter, the land and premises on which the vendor's lien was retained would have sold at forced sale for a sufficient amount to fully satisfy the sum due upon said note, including principal, interest, attorney's fees, and all costs of foreclosure of the vendor's lien over and above all other incumbrances thereon, but since such maturity, and since the lapse of one year thereafter, the land had decreased in value to such extent that it would not sell at a fair voluntary sale for cash or under forced sale for more than $10 per acre; that the plaintiff had permitted the removal of certain improvements from said land of the value of $250, and had permitted other improvements on the land to deteriorate in value to the extent of $250; that neither Smith nor plaintiff had paid taxes due on the premises for four years, and that the taxes due thereon amounted to $396.97; that he is only an indorser of the note, and pleads the failure of the holder thereof to sue at the first or second term of court after the note became due, as a bar to such holder's right to recover against him; that since the filing of this suit John S. Smith, the maker of the note, has been adjudged a bankrupt, but has not yet been discharged; that the note was not transferred to the plaintiff until after it

became due, and that plaintiff is not a holder of said note for value in due course without notice; that the guaranty on the note has never been transferred to plaintiff, and therefore the same is not owned by plaintiff; that it would be unfair, inequitable, and unjust to allow plaintiff to recover against him upon his guaranty.

By supplemental petition Ganado Land Company specially demurred, first, to the plea of ultra vires made by all of the defendants, and says that the matter pleaded constitutes no defense to plaintiff's cause of action; second, to those parts of paragraph 9 of the answer of J. E. Harmon setting up as a defense that the land securing the notes sued on had deteriorated in value since the maturity of the note; that the improvements on the land had been neglected and had deteriorated in value, and that plaintiff and Smith had permitted the taxes to accumulate against the land; that the matters pleaded constitute no defense to plaintiff's cause of action. It also denied generally the allegations of the answers of all defendants.

The court sustained plaintiff's special demurrer to the plea of ultra vires interposed by the defendants, and overruled all other demurrers and exceptions of all parties. The cause was submitted to the court without a jury and thereupon judgment was rendered decreeing that the Ganado Land Company recover from John S. Smith the sum of $1,623.08, being the amount of principal, interest thereon to date of judgment, and attorney's fees as provided in the note sued on, together with interest on the judgment at the rate of 8 per cent. per annum from date thereof until paid; that the vendor's lien asserted by plaintiff on a certain $57\frac{38}{100}$-acre tract of land situated in Jackson county, Tex., and described in the judgment, be foreclosed against all defendants, and that said land be sold to satisfy said judgment; that, as against defendants Mrs. Johnie Smith and J. E. Harmon, the plaintiffs should take nothing, and that the writ of attachment issued and levied upon properties owned by J. E. Harmon, described in the judgment, be set aside and held for naught, and that said Harmon should recover from the plaintiff all costs incurred by him in the suit. From so much of the judgment rendered in favor of J. E. Harmon, the Ganado Land Company has appealed, and John S. Smith has filed cross-assignments complaining of the judgment entered against him.

[1] It is apparent from the judgment that so much thereof as was in favor of appellee Harmon was based upon either one or both of the following two contentions made by Harmon, to wit: First, that Harmon was only an indorser of the note sued on, and since appellant failed to bring suit on the note and indorsement at either the first or second term of court, as provided by law for fixing

the liability of indorser, the indorser, Harmon, was released from liability; and, second, that appellant was not entitled to a recovery against him because the holders of the note delayed in demanding payment of the note and bringing suit on the same, and on the vendor's lien retained on the land of Smith to secure payment of the note, until the land had greatly depreciated in value, until a large amount of taxes had accumulated on said land, and until certain improvements had been removed therefrom by Smith, so that at the time suit was brought on the note, about four years after it became due, said land was not of sufficient value to pay the sum due upon the note, together with attorney's fees and costs of foreclosure and sale of the same, and therefore it would be inequitable, unfair, and unjust to allow appellant to recover against him.

By its assignments appellant insists that the court erred in rendering judgment for appellee Harmon, in that, first, Harmon was not a simple indorser of the note, but was, as shown by the writing on the back of the note signed by him, a guarantor of the payment thereof, and under such circumstances he was not released from guaranty by reason of the failure of the holder of the note to sue on same at either the first or second term of court after maturity thereof; and, second, that Harmon, the guarantor, was not released from his absolute guaranty of payment of the note on demand at any time after maturity thereof upon a showing that the land upon which a lien rested to secure payment of said note had depreciated in value between the date of the maturity of the note and the time of filing suit thereon; that the owner of the land had permitted a large amount of taxes to accumulate against the same after maturity of the note, or that the owner had removed or permitted to be removed from said land certain improvements so that the land could not be sold for a sufficient sum to pay the note, attorney's fees, and costs of the foreclosure suit and sale thereunder, there being no showing that the holder of the note had anything to do with the matters causing the depreciation of the security.

We think the contentions of appellant should be sustained. It is shown that appellee Harmon sold the land to J. S. Smith and wife and demanded from the purchasers, as part payment of the purchase price, the note sued upon, payable to Agathe Schadwitz; that, upon the execution and delivery of the note to Harmon, he transferred the same, by the instrument on the back thereof, to Mrs. Schadwitz as a payment on a debt he owed her, and by the writing on said note he guaranteed the payment of the same at any time on demand after maturity, and waived demand, protest, and notice of nonpayment. So far as shown, he made no demand at any time at or before maturity upon the holder of the note that suit be brought thereon, as is provided by article 6329, Revised Civil Statutes of 1911, for fixing liability of a surety. Certainly Harmon was not less than a surety on the note sued on. We held, however, that Harmon was an absolute guarantor of the payment of the note and was primarily liable for its payment by reason of his guaranty. His guaranty was not a guaranty of collection, nor a conditional one, but was one of absolute payment, and as said in McMurray v. Noyes, 72 N. Y. 524, 28 Am. Rep. 180:

"The fundamental distinction between a guaranty of payment and one of collection. is that in the first case the guarantor * * * without taking any steps to collect * * * will pay, and the creditor may, upon default proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor." Slaughter v. Morton (Tex. Civ. App.) 185 S. W. 905; Tobin Canning Co. v. Fraser, 81 Tex. 407, 17 S. W. 25; El Paso Bank & Trust Co. v. Bank (Tex. Civ. App.) 202 S. W. 522; Donley v. Bush, 44 Tex. 1; 28 Corpus Juris, p. 972, §§ 124 and 125; page 979, § 135; and page 982, § 139; McMurray v. Noyes, 72 N. Y. 524, 28 Am. Rep. 180; Gage v. Bank, 79 Ill. 63; 20 Cyc. pp. 1459 and 1460.

In Cyc., above cited, at pages 1459 and 1460, it is said:

"The general rule is that no demand upon the principal debtor is necessary in case of an absolute guaranty. And when from the absolute character of a debt whose payment is guaranteed nothing of a preliminary nature on the part of the creditor is required by the law to perfect his rights, demand and notice are not essential to enable him to enforce the guaranty, as where the guaranty is of the payment of a pre-existing debt. And by the great majority of the courts it is held that where one guaranties the payment of a note proof of demand and notice of nonpayment are unnecessary. Instruments by which the maker guaranties payment of a specified sum of money at the end of a stated period are usually held to be absolute contracts of guaranty within the rule. Of course this rule has no application where a demand upon the principal debtor is necessary to place him in default."

And on page 1462:

"And in the case of absolute guaranties, no condition being annexed to the contract, no condition is implied by law requiring notice to the guarantor of the default of the principal. The rule is that demand and notice are not necessary to hold the guarantor of the payment of the debt liable if nothing remains to be done on the part of the guarantee to perfect his rights as against the principal; in such a case his undertaking is not treated as a collateral liability, but is a primary and positive agreement; and the contract of the guarantor is commensurate with that of the principal, and the breach of the principal's contract ipso facto imposes upon him a complete liability."

The rule above announced is supported by decisions of the highest courts of many states cited by Cyc.

The rules announced in Corpus Juris, above cited, are substantially to the same effect as those announced by Cyc, and they have support in numerous cases cited in 28 Corpus Juris, p. 972 et seq., as well as the cases above cited herein.

[2] There was no condition or conditions existing known to any holder of the note which would reduce the value of the security which were not known to exist by the guarantor.

J. E. Harmon, the guarantor, testified as follows:

"I am familiar with the market value of lands in the vicinity of the said 57.33-acre tract of land described in this suit. As to my opportunity to become familiar with land values in the vicinity of said land, will say that, during my permanent residence in Jackson county, I was engaged in the real estate business, and since October 17, 1918, I have owned a number of tracts of land in Jackson county and have kept in close touch with real estate values. I consider the fair market value of the land mentioned in plaintiff's amended petition, at this time, to be $10 per acre. As to what in my opinion was the fair market value of said land on October 17, 1918, will say I think the property in question was sold for a fair market value on October 18, 1918. The reason for the decrease in the market value of lands in Jackson county since October 17, 1918, has been because of a number of crop failures and the general decrease on account of conditions following the war."

For the reasons above expressed, we think the court erred in rendering judgment for appellee Harmon, and in not rendering judgment against him in favor of appellant for the sum due on the note, together with attorney's fees, as provided thereby, and in not foreclosing appellant's attachment lien on the land of Harmon upon which the attachment sued out by appellant was levied and which is described in the court's judgment.

[3] This brings us to a consideration of the cross-assignments of appellee J. S. Smith. By his first cross-assignment Smith insists that the court erred in sustaining appellant's special exception to so much of his answer as alleged that the purchase of the note by appellant was an ultra vires act, as a defense to appellant's suit against him. We overrule the assignment. The contention of appellee Smith is that appellant, being incorporated for the purpose of promoting immigration, its acquisition of the note and lien retained on the land to secure its payment was ultra vires and void. The only clause in the charter issued to appellant which declares the purpose of its incorporation is as follows:

"The purpose for which it is formed is the promotion of immigration."

The name of appellant, "Ganado Land Company," conveys to the mind that the company contemplated having something to do with land. This court is without judicial knowledge and it has not been informed by anything in the record as to what acts are necessary to promote immigration. So far as we are advised, appellant may, under the provision of its charter, acquire vendor's lien notes with a view to ultimately acquiring title to the land upon which it rests, and use the land in some way to induce persons to immigrate to and settle in the locality where such land is situated, but, if there was any force in appellee's objection to the purchase of the note and lien by appellant, it could not be raised by the debtor or debtors, for where a corporation is incompetent by its charter to take title to property a transfer of it is not void, but only voidable; the sovereign alone can object to such transfer. It is valid until assailed in a direct proceeding instituted for that purpose. Our statutes in force at the time appellant purchased the note and lien in question, relative to the matter now being discussed, provide:

Article 1164, Vernon's Sayles' Civil Statutes 1914: "No corporation, domestic or foreign, doing business in this state, shall employ or use its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation or those permitted by law."

Article 1167 of the statutes provides that, if any corporation shall violate the provisions of article 1164, it shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, and all rights and franchises which it holds under, from, or by virtue of, the laws of this state. And by article 1193 a penalty is prescribed for a violation of any laws of the state by a corporation, but nowhere is it provided that the act in acquiring property by a corporation contrary to its charter powers shall be void, and, as said in National Bank v. Whitney, 103 U. S. 99, at page 102, 26 L. Ed. 443, in deciding the question here presented—

"that the statute did not declare such security void, but was silent on the subject; that had Congress so intended it would have been easy to say so, and it can hardly be presumed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision."

In the case from which we have just quoted, it is held that objections such as made by appellee Smith relative to the purchase of the note and lien, though such purchase be conceded to be an ultra vires act, can only be urged by the sovereign.

The rule announced in the case last cited is cited with approval in Reynolds v. Crawfordsville Bank, 112 U. S. 405, 413, 5 S. Ct. 213, 28 L. Ed. 733. And our Supreme Court, in case of Bond et al. v. Terrell Cotton &

Woolen Mfg. Co., 82 Tex. 309, 18 S. W. 691, said:

"It appears to be the settled rule and doctrine of our highest tribunal that the benefited party to a contract executed by a corporation shall be held estopped from resisting the demand of a corporation founded upon such contract, even though, by the statutory charter of the corporation, it is. by clear implication, forbidden to enter into the contract. Bank v. Whitney, 103 U. S. 99 [26 L. Ed. 443]; Swope v. Leffingwell, 105 U. S. 3. [26 L. Ed. 939]; Reynolds v. Bank, 112 U. S. 405, 5 S. Ct. Rep. 217 [28 L. Ed. 733]."

[4] By his second cross-assignment appellee Smith complains of the refusal of the court to sustain his plea of limitation. He contends that at the time plaintiff's original petition was filed, to wit, on the 6th day of October, 1924, the plaintiff was not the owner of the note and that the filing of such petition did not stop limitation from running against the note; that the notes became barred by the four years' statute of limitation on the 17th day of October, 1924; that the plaintiff never became the owner of the note until the 23d day of October, 1924, 6 days after it became barred; and that before the supplemental petition was filed the note had become barred, and therefore the court should have sustained his plea of limitation.

The complaint is not well founded. As we have already shown, the undisputed evidence shows that the note was transferred to appellant by Fred Mauritz, by authority of the Seguin Bank, and became its property before the original petition was filed, and that such petition was filed before the note would have been barred by the four years' statute of limitation pleaded by Smith.

Appellee Harmon also filed cross-assignments, but what we have said in the foregoing with reference to the defenses interposed by him and the cross-assignments of Smith disposes of his assignments without further comment.

For the reasons above expressed, the judgment rendered in favor of appellee J. E. Harmon is reversed, and judgment is here rendered for appellant against J. E. Harmon for $1,623.08; same being the amount of principal, interest thereon to date of judgment of the trial court, and attorney's fees, as provided in the note, together with 8 per cent. per annum interest thereon from date of said lower court judgment until the same is paid.

Judgment is also here rendered foreclosing the attachment lien of appellant upon the land of the said J. E. Harmon, which is described in the judgment of the trial court.

The judgment in all other respects remains undisputed and is affirmed.

Reversed and rendered in part.

Affirmed in part.